UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

JOHN DOE,                                              :

      Plaintiff,                                 :
                                    Civil Action No.
v.                                                     : 1:05-cv-02449-RBW

UNITED STATES DEPARTMENT OF                            :
LABOR, et al.,
                                    :

      Defendants.

**MEMORANDUM OF POINTS AND AUTHORITIES IN
OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
OR, IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiff John Doe, by his undersigned counsel, herewith submits his Memorandum of Points and Authorities in Opposition to Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment.

Preliminarily, plaintiff notes that defendants' motion relies on documents and assertions of fact; yet, defendants do not provide the Court with a Statement of Material Facts Not in Dispute in support of their request for summary judgment. If the Court chooses to accept them and thereby to treat defendants' motion as a motion for summary judgment in the manner allowed by Rule 12(b), plaintiff asks that the Court give the parties notice of that intention and an opportunity to invoke the procedures of Rule 56. 5C Wright and Miller, <u>Federal Practice and Procedure</u> (2004), § 1366 at 188; <u>Amons v. District of Columbia</u>, 231 F. Supp.2d 109, 113 (D.D.C. 2002).

In any event, plaintiff contends that the following material facts are in dispute, as indicated in the Declaration of J. Michael Hannon filed in support of this opposition:

1.      The Department of Labor [DOL], has received numerous complaints over the

years from federal employees who have discovered the revelation of their personal medical information on the internet. DOL knows that many of these employees reported damage to their reputations and emotional health from exposure of this information.

2. DOL for several years has been on notice of this problem, and its Solicitor has not taken any action to remedy the unauthorized disclosure of confidential medical information.

3. Other federal agencies routinely avoid this problem by the use of pseudonyms and careful drafting of opinions. DOL is aware that other agencies utilize these practices.

4. The federal courts, in matters involving confidential grand jury information, state secrets, or proprietary information routinely craft their opinions in such a manner as to protect this type of information.

5. DOL has considered such measures as blocking access to its website through certain search engines, but has rejected sanitization as a solution.

6. Plaintiff contends that discovery from DOL in this action will disclose that DOL was on notice for several years of this problem and did nothing.

7. Plaintiff contends that the sole reason why DOL has done nothing to remedy this situation is bureaucratic obstinacy and callous disregard for the privacy rights of millions of federal employees. The solution is quite simple.

For this reason, the motion should be dismissed, and this matter should be permitted to proceed to discovery. Defendants' additional arguments are addressed in turn below.

## Statute of Limitations

Defendants assert that plaintiff's claim for damages is barred by the two-year statute of limitations in the Privacy Act, 5 U.S.C. § 552a(g)(5)(Motion MPA at 5, 9).[1] That provision states that a suit in federal court under the Privacy Act must be brought within two years "from the date on which the cause of action arises". This suit was filed on December 20, 2005. Defendants contend that plaintiff's cause of action arose not later than April 23, 2002, the date when the Employees' Compensation Appeals Board (hereafter referred to as "the Board") issued its Decision and Order affirming denial of plaintiff's workers' compensation claim.

Plaintiff's suit for damages was timely filed. The Complaint alleges that defendants violated the Privacy Act by their willful and intentional disclosure of private medical information concerning plaintiff in the Decision and Order that identified plaintiff by name, and publishing the Decision and Order on the Board's website and elsewhere (Complaint, ¶¶ 32, 33, 36, and 37). Plaintiff's claim for damages is therefore based on § 552a(g)(1)(D). That section provides that a civil action may be brought whenever an agency "fails to comply with any other provision of this section, or any rule promulgated thereunder, in such a way as to have an adverse effect on an individual". Under § 552a(g)(4), it is provided that actual damages may be recovered but not less than $1,000 in any suit brought under subsection (g)(1)(D) "in which the court determines that the agency acted in a manner which was intentional or willful". By § 552a(g)(5), such a suit may

---

[1] In this manner, plaintiff will refer to Defendants' Memorandum of Points and Authorities in support of their Motion.

3

be brought within two years from the date the cause of action arose. Plaintiff's suit was filed within that time.[2]

Plaintiff first discovered, in October 2004, that the Decision and Order appeared on the Internet. He then wrote to the Department of Labor in October 2004 to request an amendment to his record (Complaint, ¶ 20; Exhibit A to Complaint at 2 stating "I never found out about this until recently"). This was the first time plaintiff was aware of his claim, and so was when his cause of action first arose. Tijerina v. Walters, 321 F.2d 789, 798 (D.C. Cir. 1987). None of the documents defendants identify (Motion MPA at 7) that the Board sent to plaintiff before the Decision and Order was issued informed him that the Decision and Order would be included on the Board's website. It is an undisputed fact that plaintiff was never asked whether he would consent to publication of the Decision and Order on the website or anywhere else. To the contrary, plaintiff was assured his case would be treated as confidential. In his letter requesting amendment of his record, plaintiff stated: "I requested confidentiality from the USDOL/ECAB and was told over and over again my case would remain confidential. Nobody ever told me it would eventually be published and ultimately added to the Internet and other media for the 'world' to see" (Exhibit A to Complaint).

---

[2] Defendants do not argue that the two-year statute of limitations bars plaintiff's suit for injunctive relief following refusal of his request for amendment of his record. A request to amend a record is a civil remedy provided for in § 552a(g)(1)(A). The two-year statute of limitations, as it applies to that subsection, runs from the date of the agency's determination not to amend an individual's record in accordance with his request. In this case, that determination was by letter dated December 22, 2004 (Exhibit C to Complaint), so the two-year statute of limitations commenced from that date.

The Board's routine use notice at 67 Fed. Reg. 16867-16868 stating that Board decisions "are available on ECAB's Internet website" was unknown to plaintiff, and was not included or mentioned in the materials the Board sent to plaintiff in connection with his appeal (Exhibit A with Exhibits 1-4 accompanying Motion MPA). Plaintiff never knew, and never had any reason to know, of the existence of his cause of action until, by happenstance "when he was working on the computer" (Complaint, ¶ 21), he discovered the Decision and Order on the Board's website. The Complaint, filed December 20, 2005, was filed well within two years following that discovery.

As further showing that plaintiff's suit for damages was timely filed, plaintiff cites the Court to his letter requesting amendment of his record (Exhibit A to the Complaint). That letter states that plaintiff was repeatedly assured that his case would remain confidential. "Nobody ever told me it would eventually be published and ultimately added to the Internet and other media for the 'world' to see" (Exhibit A at 2).[3] This amounts to a misrepresentation pursuant to § 552a(g)(5). Under that section, the two-year statute of limitations does not begin to run until plaintiff discovered the misrepresentation.

### Routine Use

Defendants argue (Motion MPA at 11-16) that placing decisions on the Board's website is a "routine use" of Board decisions that, pursuant to § 552a(b)(3), is an exception to an

---

[3] Presumably, this assurance was provided on the basis of 20CFR § 10.10, which applies to the OWCP that "All records relating to claims for benefits, including copies of such records maintained by an employer, are considered confidential and may not be released, inspected, copied or otherwise disclosed except as provided in the Freedom of Information Act and the Privacy Act of 1974"..

5

agency's duty under the Privacy Act not to violate an individual's privacy. This exception is framed in the following manner:

> Section 552a(b) ("Conditions of Disclosure") of the Privacy Act mandates:
>
> No agency shall disclose any record which is contained in a system of records by any means of communication to any person, or to another agency, except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains, <u>unless</u> disclosure of the record would be –
> . . .
>
> (3) for a <u>routine use</u> as defined in subsection (a)(7) of this section and described under subsection (e)(4)(D) of this section.

(Emphasis supplied).

Subsection (a)(7) of § 552a defines "routine use" to mean "with respect to the disclosure of a record, the use of such record for a purpose <u>which is compatible with the purpose for which it was collected</u>" (Emphasis supplied).

Publication of the Board's Decision and Order on the Board's website is not a "routine use" for the following reasons.

Publishing on a website, and the other ways the Board publishes its decisions that contain claimants' names and their confidential medical information, discloses that information and its relationship to the claimants to all the world. In the manner that plaintiff, while using his computer, discovered that the decision was published on the Board's website, search engines prowling the "universe" of the Worldwide Web capture the decisions by reason of the fact that they contain the claimants' names. By means of the search engines, anyone who, for any licit or illicit reason, wishes to know about a claimant can observe the confidential medical information concerning the claimant that is displayed in the Board's decisions. The same is true of all the other ways the Board publishes its decisions. It is the purpose of the Privacy Act to keep such

information private and not, without plaintiff's prior permission, indiscriminately deliver it to the world via the Internet and otherwise.[4]

Even publication in its published (bound) decisions on the Lexis/Nexis and Westlaw databases is a Privacy Act violation. Publication of either an employee's identity or medical history is not "compatible with the purpose for which it was collected". § 552a(a)(7), supra. Publication of this information is not necessary for the Board's decisions to serve as precedent. That is not "routine use".[5]

Responsive to defendants' contention (Motion MPA at 14-16) that including confidential medical information in decisions is required for the Board to decide appeals, inclusion of plaintiff's medical information in the Board's Decision and Order in his appeal is not shown to be necessary for the Board to decide the appeal. The issues were: (1) whether an injury that

---

[4] Publication of confidential material on the Internet was at issue is Barry v. U.S. Department of Justice, 63 F. Supp.2d 25 (D.D.C. 1999)(Robertson, J.). The Court held that publication on the Internet did not "disclose" the material because it had already been publicized to "several media organizations" and been the subject of newspaper articles, so by then it was "very much public" (63 F. Supp.2d at 27). It may be assumed the Court would have found the Internet publication to violate the Privacy Act had that publication "disclosed" the material. In the present case, for the reasons herein presented, the ways the Board publicizes its decisions (in bound volumes and on Westlaw and Lexis/Nexis) are in no way equivalent to broadcasting them on the Internet.

[5] In their Motion MPA at 11, defendants quote from the Board's most recent routine use notice that explains: "Board final decisions and/or orders are public documents and are accessible to interested persons" (Emphasis by defendants)(citing to 67 Fed. Reg. at 16867). The category of "interested persons" should include only those who wish to use the Board's decisions in the normal way that legal decisions are customarily used. Defendants state (Motion MPA at 14) that the Board is "a court of last resort" that, quoting from Exhibit B to the Complaint, "creates a body of legal precedent to guide future appellants, lawyers, and the public on legal issues". Publishing the decisions on the Internet, with all the confidential medical information they contain, exposes that information to access by persons who most certainly are not "interested persons" in the sense of the Board's routine use notice.

plaintiff suffered in 1999 was a recurrence of a disability he suffered in 1996 or whether it was a new injury that required plaintiff to use a different form to submit a new claim for occupational disease within the three years allowed pursuant to 5 U.S.C. § 8122; and (2) whether the OWCP properly denied plaintiff's request for oral hearing as untimely. Plaintiff requested an oral hearing because he asserted he had not received the OWCP decision dated February 7, 2001, advising him that he needed to file a new claim for occupational disease.

The second issue was dispositive. If he prevailed on that issue, and the Board held he was entitled to an oral hearing to show he had not received the OWCP decision, plaintiff might have submitted a new claim for occupational disease. The Board might have ruled on the second issue without setting forth in its decision the details of plaintiff's illness and disability. The Board might then have avoided revealing confidential medical information concerning plaintiff that is protected by the Act. Plaintiff does not purport to instruct the Board on how to compose its decisions, but he notes only that what confidential medical information concerning a claimant a decision reasonably contains is appropriately affected by the nature of the issues presented to the Board. Evidence that the Board has acted willfully or intentionally would include the fact that the Board caused a decision to include confidential medical information when the issues presented did not reasonably require disclosure of that information.

Plaintiff's suit is directed against <u>any</u> publication of Board decisions that contain his and other claimants' confidential medical information that identify his name or other claimants' names and therefore enable readers to associate the medical information with him or another particular claimant. Defendants do not respond to this concern. By the scope of the "routine use" defendants argue for (Motion MPA at 12-13), they appear not to think it possible that Board

8

decisions not be fully published and reported when the issues require that the opinions reveal confidential medical information. Defendants do not seem attentive to the authority granted to them by the Freedom of Information Act, 5 U.S.C. § 552(a)(2), to prevent unwarranted invasion of personal privacy in publishing their decisions.[6] In responding to plaintiff's claim, defendants appear too closely to argue that full reportage and publication of all decisions is mandated except for choosing which opinions are sufficiently important to include in the bound volumes of the Board's published decisions (Motion MPA at 5; Exhibit B, Declaration of Gerson, ¶ 2). Among the questions of fact this case raises is whether that is so, whether making publicly available every decision in every available way and bearing the names of the claimants is reasonably necessary or justified. Defendants apparently entertain, in response to plaintiff's suit, no consideration of other options, as Courts allow, such as not reporting cases, either not at all or not fully reporting them, or providing confidential status to shield the parties' privacy (as so well illustrated by the way the instant proceeding was filed as a "John Doe" matter) or simply to delete the claimants' names, use initials, or refer only to the Case Number. If Privacy Act concerns could be responded to in these ways, the Board's decisions might freely refer to medical information as the Board deems the reference useful to the decisional process, yet sensibly accommodate claimants' right under the Privacy Act that their confidential medical information

---

[6] That section states: "To the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion . . . However, in each case the justification for the deletion shall be explained fully in writing, and the extent of such deletion shall be indicated on the portion of the record which is made available or published, unless including that indication would harm an interest protected by the exemption in subsection (b) under which the deletion is made".

not be disclosed. Thus, the Board may publish the medical information, but not in a manner that connects or associates that information to any particular claimant.

For these reasons, publishing the Board's Decision and Order identifying plaintiff by name is not compatible with the purpose for which the confidential medical information it contains was collected. It is therefore not a routine use as defined by the Privacy Act.

In <u>Britt v. Naval Investigative Service</u>, 886 F.2d 544, 548 (3rd Cir. 1989), the Court of Appeals noted that the Privacy Act contains two discrete limitations on the routine use exception. The first is the compatibility requirement; the second is the requirement that agencies publish their routine uses. In the present case, the Board's routine use notice states the purpose is "To maintain formal records of appeal dispositions" (67 Fed. Reg. At 16867). It further states that final decisions of the Board "are public documents and are accessible to interested persons" (<u>Id</u>.). None of this justifies publishing decisions on the Internet or elsewhere when the decisions disclose confidential medical information associated with particular claimants in violation of the Privacy Act.

## The Claim for Damages

Defendants assert plaintiff cannot recover damages under § 552a(g)(4) because publishing the Decision and Order on the Board's website and otherwise was not "intentional or willful" (Motion at 17). That limitation pertains to suits brought under the provisions of § 552a(g)(1)(C) or (D). The limitation of actual damages to agency action that was "intentional or willful" is phrased in the disjunctive. Plaintiff asserts both adjectives apply to the conduct at issue in this case. The conduct satisfies the test that the agency disclosed confidential material "without grounds for believing it to be lawful, or by flagrantly disregarding others' rights under

the Act". <u>Albright v. United States</u>, 732 F.2d 181, 189 (D.C. Cir. 1984)(holding this is the appropriate test of "willful or intentional" conduct).

The Board acted willfully and intentionally also because it knew or ought to have known that publishing decisions containing confidential medical information identified with particular claimants is causing, has caused, and will continue to cause claimants emotional distress and other mental and physical injuries when, as plaintiff did, they discover decisions bearing their names and revealing confidential medical information concerning them. <u>Albright v. United States, supra</u>, 732 F.2d at 186, holding: "We agree with the appellants' argument that emotional trauma alone is sufficient to qualify as an 'adverse effect' under Section 552a(g)(1)(D) of the Act".

In any event, this is a factual issue appropriately resolved by discovery. Plaintiff attaches to this Memorandum the Declaration of J. Michael Hannon. This Declaration shows that defendants have for some time known about the problem that publishing Board decisions on the Internet is causing, that federal employees are suffering damages, and that defendants have turned a deaf ear to their complaints.

The Board acts in an intentional and willful manner in "flagrant disregard" of claimants' rights when it places its decisions and orders on its website and otherwise publishes the decisions identifying claimants by name, thereby exposing the claimants' confidential medical information to an infinitely broader category of persons than "persons interested" in using the Board's decision as precedent. 67 Fed. Reg. at 16867 ("Board final decisions are/or orders are public documents and are accessible to <u>interested</u> persons" (Emphasis supplied)). Access to interested persons, even if such persons are those who would see the decisions on the Internet, could be

allowed if the claimants' names were deleted so that the published confidential medical information could not be traced to particular claimants.

### **Injunctive Relief**

Defendants contend that plaintiff's claim for injunctive relief fails because he did not exhaust his administrative remedies and, again, on the ground of the "routine use" exception (Motion MPA at 18-21). For the reasons stated above, publishing the Decision and Order on the Board's website and otherwise in a form that identifies plaintiff by name is not a "routine use" pursuant to § 552a(7). That such publication is remote from being any "routine use" of the confidential medical information is no less true in reference to the remedy of injunctive relief than it is to the other remedies plaintiff seeks. Its status as such does not vary by the type of relief sought.

Clearly, plaintiff exhausted his administrative remedies. He requested that his record be amended by deleting the Decision and Order from the Board's website and from other media. His request was twice denied (Exhibits B and C to the Complaint). Section 552a(g)(2)(A) affords the remedy of an injunction in the context of a request for amendment of a record. It states: "In any suit brought under the provisions of subsection (g)(1)(A) of this section, the court may order the agency to amend the individual's record in accordance with his request or in such other way as the court may direct". The letters responding to plaintiff's requests understood that his request was that the Board's decision be removed from the Board's website (See: Exhibits B and C to the Complaint).

To the extent defendants argue there is a discordance between plaintiff's request and his claims in his Complaint (Motion MPA at 20), plaintiff's request exactly corresponds to what he

seeks in his Complaint before this Court - removal of the Decision and Order from the Internet and from other locations where it is published. It is no difficulty that his request did not mention possible redaction of the private medical information from the Decision and Order. Redaction would have been an appropriate response to plaintiff's concern, and would have been a perfectly satisfactory response to plaintiff's request (removal of confidential material from a document provides relief equivalent to removal of the document itself). Equally effective, and simpler to accomplish, would, as suggested above, be to remove plaintiff's name from the decision, thereby preventing readers from associating the medical information with plaintiff, as that modification would have the same effect for other particular claimants. Moreover, this Court is not limited to the relief that plaintiff sought in his request, but may issue an injunction "in such other way as the court may direct" (subsection (g)(2)(A), supra).

Defendants, therefore, have not shown that plaintiff failed to exhaust his administrative remedies. The record demonstrates quite the opposite. By requesting removal of the Decision and Order from the Board's website and elsewhere it is published, plaintiff exhausted his administrative remedies, and is entitled to injunctive relief under § 552a(g)(2)(A).

### Common Law Invasion of Privacy

Defendants (Motion MPA at 21-23) argue that Counts III and IV of the Complaint, stating claims of common law invasion of privacy against the Department and the Secretary of Labor, must be dismissed on the ground of sovereign immunity. Defendants assert that the only statutory basis for such claims is the Federal Tort Claims Act. Given that the Department concedes that the Privacy Act governs this action, plaintiff does not object to dismissal of theses counts without prejudice.

13

Respectfully submitted,

THOMPSON O'DONNELL, LLP


___*//s// J. Michael Hannon*___
J. Michael Hannon #352526
Sean G. Ryan #495067
1212 New York Avenue, N.W.
Suite 1000
Washington, D.C. 20005
(202) 289-1133
(202) 289-0275 (facsimile)

Attorneys for Plaintiff


# CERTIFICATE OF SERVICE

This is to certify that the foregoing Opposition, together with form of Order, was this 17th day of March 2006, served by electronic filing to:

Marcia Berman, Esquire
United States Department of Justice
Civil Division, Federal Programs Branch
20 Massachusetts Avenue, N.W. Room 7204
Washington, D.C. 20530.


___*//s// J. Michael Hannon*___
J. Michael Hannon