# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| JOHN DOE,[1] | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Civil Action No. 05-2449 (RBW)** |
| | ) | |
| U.S. DEPARTMENT OF LABOR, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

The plaintiff, John Doe, brings this action against the United States Department of Labor ("DOL") and Secretary of Labor Elaine L. Chao,[2] seeking both injunctive relief and damages for alleged violations of the Privacy Act, 5 U.S.C. § 552a (2000). Complaint ("Compl.") at 1. Plaintiff Doe brings his complaint as a class action on behalf of himself and all similarly-affected federal workers who have had their Federal Employees Compensation Act, 5 U.S.C. § 8101, et. seq. (2000), cases decided by the DOL's Employee Compensation Appeals Board ("ECAB").[3]

---

[1] Plaintiff Doe represents that he is "proceeding under an alias to mitigate any further damage that may be inflicted to his reputation, current job security, future job prospects, business opportunities, and personal life." Complaint ("Compl.") ¶ 3.

[2] Secretary Chao is being sued in her official capacity. Compl. at 1.

[3] The plaintiff has not moved for class certification, and the Court has not yet ruled on the issue. Under Federal Rule of Civil Procedure 23(c)(1), however, the Court "has an independent obligation to decide whether an action was properly brought as a class action, even where . . . neither party moves for a ruling on class certification." Martinez-Mendoza v. Champion Int'l Corp., 340 F.3d 1200, 1216 n.17 (11th Cir. 2003) (internal quotation marks and citation omitted); Charles A. Wright et al., 7AA Federal Practice & Procedure § 1785. Additionally, while "a District Court cannot simultaneously certify an action under [Federal Rule of Civil Procedure] 23(b)(3) and enter a
(continued...)

1

Currently before the Court is the defendants' motion to dismiss or, in the alternative, for

summary judgment ("Defs.' Mot.").[4]  For the following reasons, the Court denies the defendants'

motion with respect to the injunctive relief sought by the plaintiff but grants the motion with

respect to the plaintiff's claim for damages.

## I.  Background

The facts alleged are as follows.  The plaintiff, a former Peace Corps volunteer, Compl. ¶

3, became ill in 1997 while serving in the Corps in a foreign country, id. ¶ 17.  He filed a notice

of occupational disease with the DOL's Office of Workers' Compensation Programs ("OWCP"),

which the OWCP appears to have accepted, and received medical treatment for his condition.  Id.

¶ 17.  Two years later, while working for a different government entity, the plaintiff experienced

difficulty performing his job-related duties, and consequently filed a second claim with the

OWCP on December 2, 1999, for the recurrence of his disability.  Id. ¶ 18.  The OWCP denied

this second claim on February 7, 2001, id., and the plaintiff then appealed to the ECAB, id. ¶ 19.

---

[3](...continued)
final judgment in the action since Rule 23(c)(2) expressly requires prejudgment notice to the absent members of a Rule 23(b)(3) class concerning, among other things, their opportunity to 'opt out' of the class," Larionoff v. United States, 533 F.2d 1167, 1182-83 (D.C. Cir. 1976), the Court can find nothing that precludes it from denying certification at the same time as it renders a final judgment on all or part of a plaintiff's claim.  Because the plaintiff's complaint only alleges a class action claim for damages, and because the Court concludes that the alleged violations were not "intentional or willful" and thus cannot give rise to an award of damages under 5 U.S.C. § 552a(g)(5), the Court declines to certify the proposed class pursuant to Rule 23(b)(3) on the damages issue in this case.  Cf. Curtis v. Peters, 107 F. Supp. 2d 1, 10 (D.D.C. 2000) (holding that "[b]ecause the Court grants defendant's motion for summary judgment, it will deny plaintiffs' motion for class certification as moot, [as] [t]he other members of the [proposed] class should not be invited to board a sinking ship") (internal quotation marks and citation omitted).

[4] The following papers have been submitted to the Court in connection with these motions:  (1) a Memorandum of Points and Authorities in Support of Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defs.' Mem."); (2) the Plaintiff's Memorandum of Points and Authorities in Opposition to the Defendants' Motion to Dismiss or, in the Alternative, for Summary Judgment  ("Pl.'s Opp."); and (3) the Defendants' Reply Memorandum in Support of Their Motion to Dismiss or, in the Alternative, for Summary Judgment ("Defs.' Reply").

On August 9, 2001, the ECAB Clerk's Office sent the plaintiff a notice informing him that his appeal had been docketed.  Defs.' Mem. at 7 & Ex. A(4).  Enclosed with that notice were three documents:  (1) the ECAB's official Rules of Procedure, promulgated at 20 C.F.R. § 501 (2006), Defs.' Mem., Ex. A(1); (2) a document entitled "Board Procedures," which explains the ECAB appeals procedures and the methods by which its decisions are made public, Defs.' Mem., Ex. A(2); and (3) a document entitled "Processing an Appeal," which provides a more condensed outline of the ECAB appellate process, Defs.' Mem., Ex. A(3).  The ECAB issued its decision in the plaintiff's case on April 23, 2002, identifying him by his actual name and disclosing facts from his medical history pertaining to the claimed recurrence of his disability.  Compl. ¶ 20.  In addition to being sent to the plaintiff himself,[5] the decision was made accessible to the public in hard copy at the DOL's headquarters in Washington, D.C., along with copies that were made available to Westlaw and Lexis-Nexis and a copy that was posted on the ECAB's Internet website.  Defs.' Mem. at 3 & Ex. B ¶ 6.

When the plaintiff first learned of the posting of his decision on the agency's website in October 2004, Compl. ¶ 21, he wrote to the ECAB's Office of Adjudicatory Services to request that his decision "be removed from the Internet, all publicly accessible databases, and in bound form immediately."  Compl., Ex. A.  The ECAB replied on October 26, 2004, denying the plaintiff's request and explaining the reasons why the ECAB believed it was both permitted and required to make its decisions public.  See Compl., Ex. B.  On December 9, 2004, the plaintiff sent a second request by email seeking the removal of his decision from all publicly available

---

[5] Pursuant to ECAB policy, final decisions are sent to the parties the same day they are issued.  See Defs.' Mem., Ex. A(2) at 2.

sources, to which the ECAB responded on December 22, 2004, again denying his request.  See

Compl., Ex. C.

The plaintiff then filed his complaint in this case on December 20, 2005.  Compl. at 1.

Counts I and II of the complaint allege violations of the Privacy Act, 5 U.S.C. § 552a, and seek

both damages and an injunction compelling the removal of the plaintiff's confidential medical

information from all sources available to the public.[6]  Id. ¶¶ 30-37.  On March 6, 2006, the

defendants filed a motion to dismiss the complaint or, in the alternative, for an award of

summary judgment.  Defs.' Mot. at 1.  Specifically, the defendants argue that the plaintiff's claim

for injunctive relief should be dismissed for failure to state a claim upon which relief can be

granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), because he failed to exhaust his

administrative remedies before bringing this action.  Defs.' Mem. at 18-21.  The defendants also

seek summary judgment on the plaintiff's injunction claim on the grounds that the publication of

the plaintiff's ECAB decision is permitted under an exception to the Privacy Act for "routine

uses" of agency records, 5 U.S.C. § 552a(b)(3).  Defs.' Mem. at 21.  Finally, the defendants seek

summary judgment with respect to plaintiff's damages claim on the basis that, inter alia, the

alleged violations do not satisfy the standard of "intentional or willful" misconduct required for

an award of damages under the Privacy Act.[7]  Defs.' Mem. at 16-18.

---

[6] Additionally, Counts III and IV of the plaintiff's complaint allege common law invasion of privacy by both the DOL and its Secretary.  See Compl. ¶¶ 38-43.  The defendants moved to dismiss these counts for lack of subject matter jurisdiction on the basis of the plaintiff's failure to allege or demonstrate that he exhausted his administrative remedies under the Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671 et seq. (2000).  See Defs.' Mem. at 21-23.  In response, the plaintiff consents to dismissal of his common law claim.  Pl.'s Opp. at 13.  Accordingly, the Court will dismiss Counts III and IV of the plaintiff's complaint.

[7] The defendants also seek summary judgment on the plaintiff's damages claim on the basis of the Privacy Act's routine use exception, 5 U.S.C. § 552a(b)(3), and because the plaintiff's claim for damages is now barred by the Privacy Act's two-year statute of limitations set forth in 5 U.S.C. § 552a(g)(5).  Defs.' Mem. at 10-15.  Because

(continued...)

## II.  The Plaintiff's Request for Discovery

As an initial matter, the Court notes that because it looks to matters outside the pleadings to address several of the defendants' arguments, it will treat the defendants' motion, where appropriate, as one for summary judgment pursuant to Federal Rule of Civil Procedure 56.  Fed. R. Civ. P. 12(b); see also Flynn v. Tiede-Zoeller, 412 F. Supp. 2d 46, 50 (D.D.C. 2006) (stating that "[t]he decision to convert a motion to dismiss into a motion for summary judgment . . . is committed to the sound discretion of the trial court") (citation omitted).  In his opposition to the defendants' motion, the plaintiff requests that the Court provide notice if it intends to treat the defendants' motion as a motion for summary judgment, in order to give the parties "an opportunity to invoke the procedures of Rule 56."  Pl.'s Opp. at 1.  Specifically, the plaintiff contends that the question whether the defendants' conduct was "intentional or willful" under the Privacy Act, 5 U.S.C. § 552a(g)(4), "is a factual issue appropriately resolved by discovery," Pl.'s Opp. at 11.  He therefore argues that to the extent the defendants' motion is a motion for summary judgment, it should be denied or, at least, time for discovery should be allowed.  Id. at 1, 2, 11.  For the reasons that follow, the Court concludes that the plaintiff has been provided with both sufficient notice that the defendants' motion might be treated as a motion for summary

---

[7](...continued)
the Court concludes that the plaintiff's damages claim fails as the alleged violation does not rise to the level of "intentional or willful" misconduct required by 5 U.S.C. § 552a(g)(4), the Court need not address either of these arguments.  Nonetheless, the Court notes that although under prior Circuit precedent the Privacy Act's statute of limitations was deemed a "jurisdictional" barrier to suit, see Griffin v. U.S. Parole Comm'n, 192 F.3d 1081, 1082 (D.C. Cir. 1999), that decision was expressly overruled in Chung v. U.S. Dep't of Justice, 333 F.3d 273, 278 n. (D.C. Cir. 2003).  Consequently, the statute of limitations is a non-factor in the Court's assessment of its jurisdiction under 5 U.S.C. § 552a(g)(1).  Furthermore, in declining to examine this issue, the Court expresses no opinion as to whether the disclosure of the plaintiff's information on its Internet website constitutes a distinct "disclosure" giving rise to a separate cause of action under the Privacy Act.

judgment and adequate opportunity to produce affidavits and other opposing material in response to such a motion.  See Fed. R. Civ. P. 56(c), (e), (f).

"When a district court converts a Rule 12(b)(6) motion to one for summary judgment, it must allow all parties both a reasonable opportunity to present all material made pertinent to such a motion by Rule 56 and a chance to pursue reasonable discovery." Taylor v. FDIC, 132 F.3d 753, 765 (D.C. Cir. 1997) (quoting Fed. R. Civ. P. 12(b)(6)) (internal quotation marks and other citation omitted); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986) (holding that a grant of summary judgment is mandated "after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish . . . an element essential to that party's case, . . . on which that party will bear the burden of proof at trial") (citation omitted). Here, "the Court concludes that both parties have been afforded the opportunity to fully present support for their respective positions." Savage v. Scales, 310 F. Supp. 2d 122, 129-30 (D.D.C. 2004) (Walton, J.) (citations omitted).  Although no discovery has yet taken place in this case, the defendants clearly indicated that they were moving, in the alternative, for summary judgment under Rule 56, Defs.' Mot. at 1, and provided within their motion a list of ostensibly undisputed material facts, Defs.' Mem. at 2-4, as well as multiple affidavits and accompanying exhibits in support of their arguments for summary judgment, Defs.' Mem., Exs. A-B.  Indeed, the plaintiff's opposition acknowledges the defendants' "request for summary judgment" and observes that "[the] defendants' motion relies on documents and assertions of fact . . . [which] the Court [may] choose[] to accept . . . and thereby to treat [the] defendants' motion as a motion for summary judgment in the manner allowed by Rule 12(b)." Pl.'s Opp. at 1.  Accordingly, the plaintiff was afforded adequate notice of the prospect that the Court would treat the defendants'

6

motion as a motion for summary judgment and ample opportunity to respond to the defendants'

factual assertions and materials in his opposition with opposing affidavits under Rule 56(c).  See

Americable Int'l v. Dep't of Navy, 129 F.3d 1271, 1274 n.5 (D.C. Cir. 1997) (holding that it was

"not unfair" to the plaintiff to treat the district court's dismissal as an entry of summary judgment

"[g]iven that the motions were in the alternative for summary judgment and that the parties had

the opportunity to submit . . . materials in support and in opposition") (citation omitted); Tele-

Communications of Key West v. United States, 757 F.2d 1330, 1334 (D.C. Cir. 1985) (stating

that treating a motion as one for summary judgment is "fair to both parties [when] the procedural

requirements of the applicable rules were observed"); Tri-Gen v. Int'l Union of Operating Eng'rs,

433 F.3d 1024, 1029 (7th Cir. 2006) (holding that "[a]dequate notice is provided when the

moving party frames its motion in the alternative as one for summary judgment") (citations

omitted); Groden v. Random House, 61 F.3d 1045, 1052-53 (2d Cir. 1995) (observing that "[t]he

essential inquiry is whether the [plaintiff] should reasonably have recognized the possibility that

the motion might be converted into one for summary judgment or was taken by surprise and

deprived of a reasonable opportunity to meet facts outside the pleadings") (internal quotation

marks and citation omitted).

    The plaintiff's reliance on Amons v. District of Columbia, 231 F. Supp. 2d 109 (D.D.C.

2002) (Walton, J.), for the proposition that he should now be allowed "an opportunity to invoke

the procedures of Rule 56" is wholly misplaced.  Pl.'s Opp. at 1.  In Amons, the defendant

"attempt[ed] to unilaterally convert its previously filed motion to dismiss into one for partial

summary judgment" by attaching factual submissions to its reply to the plaintiff's opposition to

its dismissal motion.  231 F. Supp. 2d at 113.  This Court there "conclude[d] that the timing of

7

the attempted conversion coupled with the lack of prior notice to the plaintiff from the Court

compel[led] it to consider the defendant's pleadings as solely a motion for dismissal pursuant to

[Rule] 12(b)(6)." Id.  In the present case, by contrast, the defendants' motion was clearly

intended to seek summary judgment as an alternative, as the plaintiff himself recognized in his

opposition. Pl.'s Opp. at 1.  It thus cannot be said that the defendants "attempt[ed] to unilaterally

convert [a] previously filed motion to dismiss," Amons, 231 F. Supp. 2d at 113, nor that the

plaintiff lacked notice of the possibility that the Court might treat the defendants' motion as a

motion for summary judgment under Rule 56.  See Savage, 310 F. Supp. 2d at 129 (holding that

the Court was not required to provide the plaintiff with additional time to submit documentary

evidence in opposition to a motion for summary judgment when "notice to the parties [of the

summary judgment motion] ha[d] already been provided").  To the extent that the plaintiff felt

that he needed time to conduct depositions or other factual discovery before he could

meaningfully oppose a motion for summary judgment, his proper recourse was to move for a

continuance or a denial of the motion on those grounds pursuant to Rule 56(f).  Banks v.

Veneman, 402 F. Supp. 2d 43, 48 (D.D.C. 2005) (observing that "[d]enial of a summary

judgment motion under Rule 56(f) is appropriate when the record is undeveloped on elements of

[the] plaintiff's claim") (citation omitted).

　　　　Rule 56(f) permits courts to "deny a motion for summary judgment or order a

continuance to permit discovery if the party opposing the motion adequately explains why, at that

timepoint, it cannot present by affidavit facts needed to defeat the motion." Strang v. U.S. Arms

Control & Disarmament Agency, 864 F.2d 859, 861 (D.C. Cir. 1989) (citations omitted).  Such

an explanation must be made by affidavit, Fed. R. Civ. P. 56(f), and must "be made on personal

knowledge, . . . set[ting] forth such facts as would be admissible in evidence, and . . . show[ing] affirmatively that the affiant is competent to testify to the matters stated therein," Fed. R. Civ. P. 56(e). "The party seeking discovery [under Rule 56(f)] bears the burden of identifying the facts to be discovered that would create a triable issue <u>and</u> why the party cannot produce those facts in opposition to the motion." <u>Banks</u>, 402 F. Supp. 2d at 47 (citing <u>Byrd v. EPA</u>, 174 F.3d 239, 248 n.8 (D.C. Cir. 1999), <u>cert. denied</u>, 529 U.S. 1018 (2000) (emphasis added). "The party must also demonstrate a reasonable basis to suggest that discovery might reveal triable issues of fact." <u>Id.</u> (citing <u>Carpenter v. Nat'l Mortgage Ass'n</u>, 174 F.3d 231, 237 (D.C. Cir. 1999), <u>cert. denied</u>, 528 U.S. 876 (1999)).

In <u>Banks</u>, the plaintiff filed an affidavit pursuant to Rule 56(f) arguing that "the lack of discovery should preclude summary judgment" because she "need[ed] to develop [additional] facts [through] the discovery process." <u>Id.</u> Here, while the plaintiff's opposition and the declaration of his attorney, Pl.'s Opp., Ex. A (Declaration of Michael J. Hannon) ("Hannon Decl."), could be construed as "identifying the facts to be discovered that would [purportedly] create a triable issue," <u>Banks</u>, 402 F. Supp. 2d at 47 (citation omitted), the plaintiff has utterly failed to "adequately explain[] why [he] cannot [now] present by affidavit facts needed to defeat the motion," <u>Strang</u>, 864 F.2d at 861, nor has he "demonstrate[d] a reasonable basis to suggest that discovery might reveal" these facts in light of his apparent inability to present them at this time, <u>Banks</u>, 402 F. Supp. 2d at 47 (citation omitted); <u>see</u> <u>generally</u> Pl.'s Opp., Hannon Decl. In short, in opposing the defendants' motion for summary judgment, the plaintiff has submitted nothing which indicates "that [he] cannot for reasons stated present by affidavit facts essential to

justify [his] opposition."[8]  Fed. R. Civ. P. 56(f).  Based on this fundamental defect alone, the

Court would be justified in declining to grant the plaintiff, who has been "given reasonable

opportunity to present all material made pertinent to [a motion for summary judgment]," Fed. R.

Civ. P. 12(b)(6), leave to conduct discovery and to more fully develop the factual record.

Crawford v. Signet Bank, 179 F.3d 926, 927 n.2 (D.C. Cir. 1999) (affirming denial of a

plaintiff's motion to extend discovery because the plaintiff did not make the showing required by

Rule 56(f)); In re Technical Land, 175 B.R. 792, 796 (D.D.C. 1994) (holding that "[b]ecause the

defendant[s] not only failed to submit Rule 56(f) affidavits, but also because they merely

mentioned in their opposition general areas about which they wished to conduct discovery," the

defendants were not entitled to a continuance for discovery purposes); see Americable Int'l, 129

F.3d at 1274 n.5 (holding that it was "not unfair" to the plaintiff to treat the district court's

dismissal as an entry of summary judgment "[g]iven that the motions were in the alternative for

summary judgment and that the parties had the opportunity to submit . . . materials in support and

in opposition") (citation omitted).

Moreover, as discussed more fully in Part IV.B infra, the Court notes that even were it to

allow the plaintiff time to conduct factual discovery, he has alleged no facts that would preclude

summary judgment to the defendants on his damages claim.  Cf. id. (stating that the Court

"would also affirm dismissal . . . under Rule 12(b)(6) because . . . the allegations of the

complaint, construed in the light most favorable to [the plaintiff], reveal that [it] can prove no set

of facts that would entitle it to relief") (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974),

---

[8] Nor does the plaintiff explicitly indicate in his opposition that he is requesting a continuance for factual discovery under Rule 56(f).  See generally Pl.'s Opp.  Rather, the plaintiff simply states that the question whether the complained-of conduct is "intentional or willful" in a way that gives rise to a cause of action for monetary damages under the Privacy Act "is a factual issue appropriately resolved by discovery."  Pl.'s Opp. at 11.

overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984)).  That is, assuming arguendo that the plaintiff was able through factual discovery to substantiate the allegations set forth in his opposition and in the Hannon Declaration—that "[the] defendants have for some time known about the problem that publishing [ECAB] decisions on the Internet is causing, that federal employees are suffering damages, and that [the] defendants have turned a deaf ear to their complaints," Pl.'s Opp. at 11—it is clear under applicable caselaw that nothing the plaintiff has alleged would amount to "intentional or willful" conduct as required by the Privacy Act, 5 U.S.C. § 552a(g)(4).  Thus, it would be utterly futile to grant the plaintiff a continuance under Rule 56(f) to adduce additional facts through "depositions, answers to interrogatories, or . . . affidavits." Fed. R. Civ. P. 56(e).  The Court will therefore resolve the defendants' motion to dismiss and, where appropriate, address the motion as one for summary judgment on the strength of the factual materials currently before it.

### III.  Standards of Review

**A.    Motions to Dismiss under Rule 12(b)(6)**

When adjudicating a motion for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6), the Court must view all the allegations and facts in the complaint in the light most favorable to the plaintiff, and it must grant the plaintiff the benefit of all inferences that can be derived from those facts.  Barr. v. Clinton, 370 F.3d 1196, 1199 (D.C. Cir. 2004).  However, the Court need not accept inferences or conclusory allegations that are unsupported by the facts set forth in the complaint.  Kowal v. MCI Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994).  The Court may only consider the facts alleged in the complaint, any documents attached as exhibits, and matters about which the Court may take

judicial notice.  EEOC v. St. Francis Xavier Parochial Sch., 117 F.3d 621, 624-25 (D.C. Cir.

1997).  "A court should not dismiss a complaint pursuant to Rule 12(b)(6) for failure to state a

claim 'unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his

claim which would entitle him to relief.'"  Abigail Alliance For Better Access to Developmental

Drugs and Washington Legal Found. v. von Eschenbach, 445 F.3d 470, 475 (D.C. Cir. 2006)

(quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).

**B.    Motions for Summary Judgment under Rule 56**

Courts will grant a motion for summary judgment under Federal Rule of Civil Procedure

56(c) if "the pleadings, depositions, answers to interrogatories, and admissions on file, together

with the affidavits, if any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  When ruling on

a Rule 56(c) motion, the Court must view the evidence in the light most favorable to the non-

moving party.  Holcomb v. Powell, 433 F.3d 889, 895 (D.C. Cir. 2006) (citing Reeves v.

Sanderson Plumbing Prods., 530 U.S. 133, 150 (2000)).  The Court must therefore draw "all

justifiable inferences" in the non-moving party's favor and accept the non-moving party's

evidence as true.  Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986).

The non-moving party, however, cannot rely on "mere allegations or denials."  Burke v.

Gould, 286 F.3d 513, 517 (D.C. Cir. 2002) (quoting Anderson, 477 U.S. at 248) (internal

quotation marks omitted).  Thus, "conclusory allegations unsupported by factual data will not

create a triable issue of fact."  Pub. Citizen Health Research Group v. FDA, 185 F.3d 898, 908

(D.C. Cir. 1999) (internal quotation marks and citations omitted).  Rather, the non-moving party

must go beyond "the pleadings and by [his] own affidavits, or . . . depositions, answers to

interrogatories, and admissions on file, designate specific facts showing that there is a genuine

issue for trial." Celotex, 477 U.S. at 324 (internal quotation marks and citation omitted). Under

Rule 56(c), "the moving party is entitled to summary judgment where 'the non-moving party has

failed to make a sufficient showing on an essential element of [the non-moving party's] case with

respect to which [that party] has the burden of proof.'" Nayar v. Howard Univ., 881 F. Supp. 15,

19 (D.D.C. 1995) (quoting Celotex, 477 U.S. at 323).

## IV.  Analysis

### A.    The Plaintiff's Claim for Injunctive Relief

The Privacy Act forbids federal agencies from "disclos[ing] any record which is

contained in a system of records by any means of communication to any person, or to another

agency, except pursuant to a written request by, or with the prior written consent of, the

individual to whom the record pertains."[9] 5 U.S.C. § 552a(b).  Ordinarily, an agency's final

decisions in cases adjudicated at the administrative level are exempt from this prohibition.  5

U.S.C. §§ 552a(a)(2), 552a(b)(2).  Section 552a(b)(2) of the Privacy Act creates an exception for

disclosures of records that are required by the Freedom of Information Act ("FOIA"), 5 U.S.C. §

552.[10]  5 U.S.C. § 552a(b)(2).  And under the FOIA, every covered federal agency, "in

accordance with published rules, shall make available for public inspection and copying—(A)

final opinions, including concurring and dissenting opinions, as well as orders, made in the

_____

[9] Neither party contests that the ECAB and the DOL are "agencies" within the meaning of 5 U.S.C. § 552a(a)(1), that the plaintiff's ECAB decision is a "record" as defined by §552a(a)(4), or that the decision is "maintain[ed]" within a "system of records," as those terms are defined by § 552a(a)(3) and (a)(5), respectively.

[10] While the Privacy Act provides an independent exception for disclosures that are required by the FOIA, see 5 U.S.C. § 552a(b)(2), the defendants have not raised this as a defense to the disclosure of the plaintiff's ECAB decision, see generally, Defs.' Mem., Defs.' Reply.

13

adjudication of cases . . . unless the materials are promptly published and copies offered for sale." 5 U.S.C. § 552(a)(2).  Moreover, agency decisions issued after November 1, 1996, must be made available by electronic means.  Id.  This provision also permits, but does not compel, federal agencies disclosing such records to redact confidential information pertaining to individuals.  Id. (stating that "[t]o the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion").

The FOIA's disclosure requirement does not apply, however, to "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy."  5 U.S.C. § 552(b)(6) (emphasis added).  Consequently, if an agency's decision is sufficiently similar to a personnel and medical file and if the disclosure of that decision "would constitute a clearly unwarranted invasion of privacy," 5 U.S.C. § 552(b)(6), it need not be released under the FOIA and thus is not protected by § 552a(b)(2).  Therefore, unless one of the other exceptions of the Privacy Act applies, 5 U.S.C. § 552a(b)(1)-(12), the disclosure of a decision of this nature constitutes a violation of the Privacy Act, 5 U.S.C. § 552a(b).

In his complaint, the plaintiff contends that the disclosure of his ECAB decision constitutes a violation of § 552a(b).  Compl. ¶¶ 32, 36.  He therefore seeks a "judgment against [the defendants] for removal of private medical information from publicly available materials and the [I]nternet," Compl. at 8, 9, which the Court construes as a request for injunctive relief pursuant to 5 U.S.C. § 552a(g)(2)(A).[11]   The defendants argue that the injunction claim should

_____

[11] The plaintiff also seeks an award of attorney's fees and costs, Compl. at 8, 9, pursuant to 5 U.S.C. § 552a(g)(2)(B).  Although the Court is denying the defendant's motion for summary judgment as to the plaintiff's claim for injunctive relief, it cannot, at this juncture, grant the plaintiff the injunctive relief he seeks because the

(continued...)

14

be dismissed pursuant to Rule 12(b)(6) because the plaintiff has failed to exhaust the administrative remedies required before seeking such relief.  Defs.' Mem. at 19-21.  In the alternative, the defendants argue that they are entitled to summary judgment on the injunction claim because the publication of the plaintiff's ECAB decision qualifies as a "routine use" under 5 U.S.C. § 552a(a)(7) and § 552a(b)(3), and for that reason does not violate the Privacy Act, Defs.' Mem. at 10-16, 21.[12]   In return, the plaintiff argues that he exhausted the requisite administrative remedies by requesting the removal of his ECAB decision from publicly-accessible locations in his October 15, 2004, letter to the ECAB's Office of Adjudicatory Services.  Pl.'s Opp. at 12-13; Compl., Ex. A (letter from the plaintiff to the ECAB's Office of Adjudicatory Services).  Moreover, he contends that including his name and confidential medical information in a copy of his decision available for public viewing is not an appropriate routine use within the meaning of 5 U.S.C. § 552a(a)(7) and § 552a(b)(3).  Pl.'s Opp. at 5-10.

---

[11](...continued)
plaintiff did not file a cross-motion for summary judgment.  Consequently, it cannot conclude that the plaintiff has "substantially prevailed" so as to be entitled to "reasonable attorney's fees and other litigation costs reasonably incurred" under § 552a(g)(2)(B).

[12] While the defendants raise the statute of limitations as a defense to the plaintiff's claim for damages, they do not assert that his claim for injunctive relief is time-barred.  See generally Defs.' Mem.; Defs.' Reply.  In any event, the Court concludes that the statute of limitations has not run with respect to the plaintiff's injunction claim. Unlike the statute of limitations for an action seeking damages for violations of the Privacy Act, which "does not begin to run until the plaintiff knows or should know of the alleged violation," Tijerina v. Walters, 821 F.2d 789, 798 (D.C. Cir. 1987), in cases in which the plaintiff has requested an amendment of his record under 5 U.S.C. § 552a(d), "the two year [limitations] period is measured from the denial of a request to amend," Blazy v. Tenet, 979 F. Supp. 10, 18 (D.D.C. 1997).  It is undisputed that the agency first denied the plaintiff's request to bar public access to the ECAB decision containing his confidential medical information by a letter dated October 26, 2004. See Compl., Ex. B; Defs.' Mem. at 18.  Accordingly, because the plaintiff filed his complaint on December 20, 2005, less than two years after his initial request to amend his publicly available record was denied, the plaintiff's claim for injunctive relief was timely filed.

15

     *1.*     *The Defendant's Motion to Dismiss for Exhaustion of Administrative Remedies*

     Privacy Act plaintiffs are required to exhaust their administrative remedies before

initiating a civil action for injunctive relief under 5 U.S.C. § 552a(g)(2)(A).  Hill v. U.S. Air

Force, 795 F.2d 1067, 1069 (D.C. Cir. 1986) (holding that "[a] Privacy Act plaintiff . . .must

exhaust his or her administrative remedies prior to bringing an amendment suit").  Courts infer a

non-jurisdictional exhaustion requirement whenever Congress provides an administrative avenue

for relief.  Avocados Plus v. Veneman, 370 F.3d 1243, 1248 (D.C. Cir. 2004) (observing that

"the existence of an administrative remedy automatically triggers a non-jurisdictional exhaustion

inquiry").  Such an exhaustion requirement is presumed to be non-jurisdictional in nature unless

the "statute . . . contain[s] sweeping and direct statutory language indicating that there is no

federal jurisdiction prior to exhaustion."  Id. (quoting Weinberger v. Salfi, 422 U.S. 749, 757

(1975)) (internal quotation marks and treatise citation omitted); see also Arbaugh v. Y & H

Corp., ___ U.S. ___, ___, 126 S.Ct. 1235, 1245 (2006) (holding that "when Congress does not

rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as

nonjurisdictional in character").

     The Privacy Act sets forth a procedure by which individuals may request the amendment

of records held by federal agencies.  5 U.S.C. § 552a(d).  Agencies are required to permit

individuals to make requests directly to the agency seeking amendment of such records, 5 U.S.C.

§ 552a(d)(2), and individuals who disagree with the denial of such requests are entitled to

petition the agency for review of such denials, 5 U.S.C. § 552a(d)(3).[13]  If, upon review, the

_____

[13] When disclosing a record about which an amendment has been requested, agencies are also required to
"clearly note any portion of the record which is disputed and provide copies of the [individual's statement of
disagreement] and, if the agency deems it appropriate, copies of a concise statement of the reasons of the agency for

(continued...)

agency affirms its denial of the individual's request for the amendment, the individual may then bring a civil action in federal court.  See 5 U.S.C. § 552a(g)(1)(A).  Thus, because Congress has provided an administrative remedy for individuals seeking to amend their records, the Court must construe the Privacy Act as requiring the exhaustion of these remedies before an individual may bring a civil action.  Avocados Plus, 370 F.3d at 1248.

However, under the test established in Avocados Plus, because there is no "sweeping and direct statutory language indicating that there is no federal jurisdiction prior to exhaustion," id., this exhaustion requirement does not create a jurisdictional barrier to bringing a lawsuit, see id.; see also Arbaugh, __ U.S. at ___, 126 S.Ct. at 1245.  While § 552a(g)(1) provides that federal courts "shall have jurisdiction in the matters under the provisions of this subsection," there is nothing in the language of that or any other provision of the Privacy Act which expressly makes federal court jurisdiction over claims for injunctive relief contingent upon a plaintiff's exhaustion of available administrative remedies.  See generally 5 U.S.C. § 552a.  Accordingly, in light both the Supreme Court's unanimous decision in Arbaugh, ___ U.S. at ___, 126 S.Ct. at 1245, and the District of Columbia's decision in Avocados Plus, 370 F.3d at 1248, the Court finds that the exhaustion requirement for claims under the Privacy Act seeking amendment of records is not jurisdictional.

The record before the Court here convinces it that the plaintiff properly exhausted the administrative remedies called for by the Privacy Act.  It is undisputed that the plaintiff requested, by his letter sent to the ECAB on October 15, 2004, that the DOL remove his record

_____

[13](...continued)
not making the amendments requested, to persons or other agencies to whom the disputed record has been disclosed."  5 U.S.C. § 552a(d)(4).

from the public domain.  See Compl., Ex. A; Defs.' Mem. at 3, 20; Pl.'s Opp. at 12-13; Defs.'

Reply at 16.  Specifically, the plaintiff stated in this letter that he was "requesting that all

references to [his] case and Decision/Order be removed from the Internet, all publicly accessible

databases, and in bound form immediately."  Compl., Ex. A at 3.  The ECAB refused that request

by letter dated October 26, 2004.  Compl., Ex. B.  It is also undisputed that the plaintiff

communicated his disagreement with this refusal by an email sent on December 9, 2004, to

which the agency replied, again refusing his request, by letter dated December 22, 2004.  Compl.,

Ex. C.

    The defendants contend, however, that the plaintiff's letter in October 2004 and his

apparent request for review of the ECAB's denial of his request in December 2004 cannot suffice

to exhaust the plaintiff's administrative remedies because the relief he sought at the

administrative level was broader than what he seeks in his complaint.  Defs.' Mem. at 20-21;

Defs.' Reply at 16.  His request at the administrative level, they point out, sought the removal of

his decision in its entirety from every location where it could be accessed by the public, which

the defendants argue is "more akin to an expungement request than an amendment request."

Defs.' Mem. at 20.  This, they suggest, is far more expansive than the injunctive relief he now

seeks, i.e., the "removal of [his] private medical information from publicly available materials

and the [I]nternet."  Id. (quoting Compl. at 8, 9). The Court cannot agree with the defendants'

position for several reasons.

    First, the mere fact that the plaintiff's complaint seeks the removal of only his "private

medical information," id. (quoting Compl. at 8, 9), or, as the plaintiff asserts in his opposition,

the removal of only his name from his decision, Pl.'s Opp. at 13, instead of the wholesale

18

removal of the decision from every publicly-accessible source, should not bar him in this action

from seeking only the redaction of a portion of the decision.  The defendants have not cited, and

the Court cannot find, any authority for the proposition that a plaintiff is barred from seeking less

extensive relief in federal court than what he requested from the agency.  Indeed, it appears that

the specific relief sought by the plaintiff at the administrative level does not set the perimeters of

the relief the Court may award in a Privacy Act case.  See 5 U.S.C. § 552a(g)(2)(A) (providing

that "the court may order the agency to amend the individual's record in accordance with his

request or in such other way as the court may direct") (emphasis added).  Even under a narrow

construction of § 552a(g)(2)(A), it is logical to conclude that the relief the plaintiff sought at the

administrative level marks, at worst, the outer limit of what he could have sought through this

civil action, for to hold otherwise would irrationally discourage plaintiffs from appropriately

narrowing their claims when seeking judicial review of administrative decisions to those issues

or forms of relief which they genuinely think meritorious.[14]

Second, the alleged defect in the plaintiff's complaint could easily be repaired by an

amendment.  Federal Rule of Civil Procedure 15(a) "guarantee[s] a plaintiff an absolute right to

amend [his] complaint once at any time before the defendant has filed a responsive pleading."

James V. Hurson Assocs. v. Glickman, 229 F.3d 277, 282-83 (D.C. Cir. 2000).  And the District

---

[14] The Court is not unsympathetic to the possibility that agencies reviewing extremely broad requests for relief by plaintiffs during administrative proceedings might properly deny such requests without consideration of case-specific facts solely because some of the relief requested extends beyond the power of the agency. Consequently, it would not seem to further the policies underlying administrative exhaustion requirements to permit the plaintiff to assert a narrower request for relief in his civil action, requiring an adjudication of facts peculiar to his particular case, where the agency never examined those particular factual circumstances.  In the present case, however, the Court agrees with the plaintiff that, faced with the plaintiff's request for removal of his records and in light of the particular privacy concerns that he explicitly communicated as the motivation for that request, see Compl., Ex. A, the ECAB had a clear opportunity to consider in responding to his request the possibility of redacting the plaintiff's private medical information, his identity, or both, from his ECAB decision.

of Columbia Circuit has "repeatedly clarified" that motions to dismiss, even those which seek

summary judgment in the alternative, are not responsive pleadings for the purposes of Rule 15.

Id. at 283 (citations omitted); see also Bowden v. United States, 176 F.3d 552, 555 (D.C. Cir.

1999) (noting that "[a]t the time [the plaintiff] sought to amend, the [defendant] had filed only a

motion to dismiss or in the alternative for summary judgment, which is not considered a

responsive pleading") (citation omitted); United States Info. Agency v. Krc, 905 F.2d 389, 399

(D.C. Cir. 1990) (holding that "[m]otions for summary judgment or dismissal . . . do not

constitute responsive pleadings that prevent a party from amending without leave of court")

(citations omitted).  Thus, where a "defendant has filed a motion to dismiss [or, in the alternative,

for summary judgment] and not a responsive pleading, . . . court[s will] grant[] [a] plaintiff's

proposed amendment as of right."  Adams v. Quattlebaum, 219 F.R.D. 195, 197 (D.D.C. 2004).

Here, because no answer has been filed by the defendants, the plaintiff retains an absolute right to

amend his complaint to request the broader relief he sought at the administrative level, if that is

what he was seeking to do.  Such an amendment, however, would likely be needlessly

duplicative.  As already noted, the Court has broad discretion in Privacy Act cases to "order the

agency to amend the individual's record in accordance with his request or in such other way as

the [C]ourt may direct."  5 U.S.C. § 552a(g)(2)(A) (emphasis added).  Thus, regardless whether

the plaintiff's complaint were amended to conform to the broader relief he requested from the

ECAB, the Court could nonetheless order, inter alia, the same relief the plaintiff now seeks, i.e.,

redaction of the plaintiff's private medical information from his ECAB decision, removal of his

name, or both.  Accordingly, rather than requiring the plaintiff to amend his complaint to seek

relief that the Court could now grant with the case in its current posture, the Court concludes that

the plaintiff has exhausted his administrative remedies with respect to his claim for injunctive relief.

2.     *The Defendants' Motion for Summary Judgment on the Application of the Routine Use Exception*

Having concluded that the plaintiff has exhausted the administrative remedies available to him with respect to his claim for injunctive relief compelling the removal of his private medical information from his ECAB decision, the Court now turns to the merits of that claim.  While apparently conceding that the plaintiff's ECAB decision has been disclosed within the meaning of the Privacy Act, the defendants argue that the publication of his ECAB decision qualifies under the Act's "routine use" exception, 5 U.S.C. § 552a(b)(3), and therefore the disclosure does not violate the Act.  Defs.' Mem. at 10-16.

As noted, the Privacy Act bars agencies, including the ECAB and the DOL, from "disclos[ing] any record . . . by any means of communication to any person . . . except pursuant to a written request by, or with the prior written consent of, the individual to whom the record pertains," unless one of twelve enumerated exceptions is applicable.  5 U.S.C. § 552a(b).  To merit protection under the "routine use" exception the defendants invoke, an agency must demonstrate that its disclosure of a particular record satisfies three statutory criteria.  First, the agency must publish advance notice of the routine use in the Federal Register.  5 U.S.C. § 552a(e)(4)(D).  Second, the agency must provide a separate notice detailing the routine use to the individual whose information it plans to disclose.  5 U.S.C. § 552a(e)(3)(C).  Third, the putative routine use itself must be "compatible with the purpose for which [the record being disclosed] was collected."  5 U.S.C. § 552a(a)(7); see also U.S. Postal Serv. v. Nat'l Ass'n of Letter

21

Carriers, 9 F.3d 138, 140 (D.C. Cir. 1993) (Silberman, J.) (observing that "routine uses" under 5

U.S.C. § 552a(b)(3) must satisfy notice requirements of §§ 552a(e)(4)(D) and 552a(e)(3)(C) and

the compatibility criterion of § 552a(a)(7)).[15]

The defendants assert that they have satisfied all three of these criteria with respect to the

disclosure of the plaintiff's ECAB decision, and therefore they contend that such disclosure is

permissible under the routine use exception of § 552a(b)(3). The plaintiff apparently does not

contest that the defendants complied with the notice provisions of 5 U.S.C. §§ 552a(e)(4)(D) and

552a(e)(3)(C). See Pl.'s Opp. at 5-10.[16] He challenges, however, the defendants' position that

the disclosure of his record satisfies the compatible purpose requirement of § 552a(a)(7). Id.

Specifically, he argues that the publication of his ECAB decision in any medium—without

redacting his private medical information, his identity, or both—is not consistent with the

purpose for which this information was collected.[17] Id. at 9-10. Therefore, he maintains that the

---

[15] In U.S. Postal Service, the District of Columbia Circuit reversed the district court's judgment and remanded the case for a determination whether the Postal Service had "provided its employees with actual notice of the routine use to which [their] handicap, life insurance, and thrift plan codes would be put." 9 F.3d at 146. Judge Silberman wrote the opinion of the Circuit in the case, with one judge concurring in the judgment and one judge dissenting.

[16] Because the Court finds that the defendants have not satisfied the compatibility requirement of 5 U.S.C. § 552a(a)(7), it expresses no opinion as to whether the defendants satisfied the notice requirements of 5 U.S.C. §§ 552a(e)(4)(D) and 552a(e)(3)(C), and nothing in this opinion should be construed as concluding that these notice requirements were or were not satisfied.

[17] The plaintiff contends that his lawsuit "is directed against any publication of Board decisions that contain his and other claimants' confidential information that identify his name or other claimants' names and therefore enable readers to associate the medical information with him or another particular claimant." Pl.'s Opp. at 8 (emphases added) (original emphasis removed). He therefore suggests that the defendants should be required to redact claimants' names from all published ECAB decisions which disclose confidential medical information. Id. at 9-10. The defendants argue that "Doe's suggestion [in his opposition] that [the] ECAB redact appellants' names from its published decisions exceeds the scope of what he is asking for in this Privacy Act case," Defs.' Reply at 13, both because "his suit . . . very specifically asks only that the Department be ordered to remove medical information from his published ECAB decision," id. (citing Compl.) (emphasis added), and because "[t]he Department's position on redacting [other] appellants' names from published ECAB decisions . . . is simply irrelevant to this lawsuit," id. The Court largely disagrees with the defendants. First, as to the plaintiff's request that his own name be redacted, the

(continued...)

22

ECAB's publication of his decision is not a permissible routine use and that the Court should enjoin its further unredacted disclosure.  Id.  The Court agrees that making the plaintiff's ECAB decision available to the public without redacting his identity is not a permissible routine use of the unredacted decision.

The Privacy Act provides that "the term 'routine use' means, with respect to the disclosure of a record, the use of such record for a purpose which is compatible with the purpose for which it was collected."  5 U.S.C. § 552a(a)(7).  The Act, however, which is "[h]ardly a model of legislative precision and tailoring," Pilon v. U.S. Dep't of Justice, 73 F.3d 1111, 1112 (D.C. Cir. 1996), gives no further explanation to what constitutes such a "compatible" purpose.[18] The District of Columbia Circuit has not yet formulated a clear standard for determining whether a particular disclosure is compatible with the purpose for which the information being disclosed

---

[17](...continued)

plaintiff retains the ability, as explained supra at 19-20, to amend his complaint as of right under Rule 15(a) to include an express prayer for injunctive relief concerning the publication of his identifying information.  Moreover, the Privacy Act clearly authorizes the Court to "order the agency to amend the [complaining] individual's record . . . in such . . . way as it may direct."  5 U.S.C. § 552a(g)(2)(A).  Thus, it is plainly proper for the Court to consider the plaintiff's request, raised for the first time in his opposition, that the defendants redact his name from the published ECAB decision.  See Pl.'s Opp. at 10.  Second, it is of course true that the Court's ability to grant injunctive relief is limited to the parties in the case before it, and so to the extent that the plaintiff is asking the Court to order the redaction of all appellant names from ECAP's published decisions containing confidential medical information, such relief is beyond the Court's authority to provide.  See Getty Images News Svcs. Corp. v. Dep't of Defense, 193 F. Supp. 2d 112, 118 (D.D.C. 2002) (observing that "the Court has no jurisdiction to adjudicate hypothetical disputes in which . . . the relevant factual context[] and . . . the identity of the injured plaintiff are a matter of conjecture").  The Court does note, however, that it is difficult to imagine how its conclusion that the disclosure of the plaintiff's identity in this case does not constitute a routine use for the purposes of the Privacy Act would not similarly apply, absent very different factual circumstances, to other cases in which an ECAB decision is published containing both the appellant's identity and his or her medical information.

[18] While the Court is required to accord "great deference" to an agency's interpretation of its own routine notices, FLRA v. U.S. Dep't of the Treasury, Fin. Mgmt. Serv., 884 F.2d 1446, 1454 (D.C. Cir. 1989), cert. denied, 493 U.S. 1055 (1990), such deference is not owed where there is "no agency interpretation of the routine use language" and where the agency offers not a "general construction of the routine use wording" but merely its own conclusion that specific information may or may not be disclosed under a routine use notice.  U.S. Postal Serv., 9 F.3d at 141-42 (Silberman, J.); see also id. at 147 (Williams, J., concurring in judgment) (stating that because the agency "has provided no authoritative interpretation" of its routine use clause, the Court "must construe it [itself] in accordance with its language and the purpose expressed in that language").

was collected.   Interpreting the term "compatible" by reference to its ordinary meaning would render the routine use standard quite broad and permissive.

> In common usage, the word 'compatible' means simply 'capable of existing together without discord or disharmony.' Webster's Third New Int'l Dictionary, 463 (1971). Hence, so long as a proposed disclosure would not actually frustrate the purposes for which the information was gathered, that requirement would be met.  Only in rare cases would disclosure run afoul of such a dictate.

U.S. Postal Serv., 9 F.3d at 144 (Silberman, J.).

Both the District of Columbia Circuit in U.S. Postal Service and the parties in this case commend to the Court the approach adopted by the Third Circuit in Britt v. Naval Investigative Serv., 886 F.2d 544, 548-49 (3d. Cir. 1989).  U.S. Postal Serv., 9 F.3d at 144-45 (Silberman, J.) (citing with approval the approach adopted in Britt, 886 F.2d at 549-50); Defs.' Mem. at 13; Pl.'s Opp at 10.  The Britt Court expressly rejected the argument that to satisfy the compatibility requirement of § 552a(a)(7) a "disclosure need only be compatible with [the routine use] purpose published in the Federal Register."  Britt, 886 F.2d at 548 (alterations in original, internal quotation marks and citation omitted).  Instead, it held that the clear language of § 552a(a)(7) "requires . . . a dual inquiry into the purpose for the collection of the record in the specific case and the purpose of the disclosure."  Id. at 548-49.

Furthermore, once the Court identifies the purposes of collection and disclosure, respectively, it must then look for more than mere "relevance" of the disclosure's objective to the collection's aim.  Id. at 549.  Instead, "[t]here must be a more concrete relationship or similarity, some meaningful degree of convergence, between the disclosing agency's purpose in gathering the information and in its disclosure."  Id. at 549-50 (citing Mazaleski v. Treusdell, 562 F.2d 701, 713 n.31 (D.C. Cir. 1977)) (other citation omitted); see also U.S. Postal Serv., 9 F.3d at 144-45

24

(observing that "both the Third and the Ninth Circuits have held that there must be a far tighter

nexus – a nexus approaching an identity of purpose – between the reason the information was

collected and the proposed routine use than the word 'compatible' might imply" in 5 U.S.C. §

552a(a)(7)'s routine use definition) (citing Britt, 886 F.2d at 549-50, other citations omitted).

    The defendants argue that the publication of the plaintiff's ECAB decision satisfies the

standard elaborated in Britt, 886 F.2d at 548-50.  The ECAB's purpose in collecting and

reviewing the plaintiff's medical information, they assert, was to "correctly determine [his]

appeal[]," as his "medical information was obviously pertinent to the [ECAB's] resolution of

[the plaintiff's] claim."  Defs.' Mem. at 14.  The defendants further argue that the purpose of

making the plaintiff's decision available to the public—to "create[] a body of legal precedent to

guide future appellants, lawyers, and the public on legal issues," id. (quoting Compl., Ex. B at

1)—is compatible with the purpose of collection, id. at 15.  According to the defendants, the

common theme linking the purposes of collection and disclosure is the ECAB's "goal of

achieving a high standard of appellate review in light of [the] ECAB's status as a court of last

resort."  Id. at 15; see also id., Ex. A(2) at 2 (noting that "[t]he [ECAB] endeavors to maintain a

high standard of appellate review and to achieve, through its procedures, a just decision in every

appeal").  Moreover, they assert that redacting private medical information from publicly

available decisions would "destroy[] the purpose for publishing those decisions," as the particular

medical conditions and related circumstances peculiar to each case are "critical" to the ECAB's

dispositions, and therefore the decisions would serve little precedential value if such an integral

component were removed.  Defs.' Mem. at 15-16.  In response, the plaintiff argues (1) that the

ECAB needed neither to consider nor set forth in its opinion any of his private medical

25

information, and (2) that publishing his decision without redacting his name, thus "enabl[ing] readers to associate the medical information [contained in the decision] with him," is in no way compatible with the purpose for which that information was collected.  Pl.'s Opp. at 8-9.

Upon a careful review of the record and the parties' arguments, the Court agrees, in part, with the plaintiff.  The Court certainly recognizes the importance of enabling the ECAB to create a meaningful body of precedent from its decisions, for the benefit of future appellants and their advocates, the public, and the ECAB itself.  Indeed, the FOIA's general requirement that agencies' final decisions in cases adjudicated administratively be made available to the public, 5 U.S.C. § 552(a)(2), reflects a broad policy of allowing public access to agency determinations. Accordingly, the Court perceives no violation resulting from the inclusion of case-specific medical information not associated with particular individuals in the ECAB's decisions in order to enable those decisions collectively to form an essential corpus of administrative precedent.

The inclusion of the identity of the plaintiff, however, appears both patently unnecessary and plainly incompatible with either the purpose for which the plaintiff's medical information and his identity were collected by the ECAB or even the purpose the defendants assert underlies the disclosure of ECAB decisions.  The Court can conceive of no connection between the ECAB's collection of the plaintiff's name and confidential medical information, on the one hand, and its dissemination of his name in association with his personal medical history, on the other. Moreover, the defendants have not suggested in any way how including the plaintiff's name in his decision will advance the agency's stated purpose of developing a useful body of precedent or "achieving a high standard of appellate review."  Defs.' Mem. at 15.  If anything, it would seem that by adhering to a policy of including appellants' names and medical information in its

26

decisions, the ECAB might discourage appellants from fully disclosing sensitive medical details when pursuing appeals before the ECAB in order to avoid future embarrassment.  If this result were to occur, it would surely undermine the ECAB's ability to "achiev[e] [the] high standard of appellate review" to which it aspires.  Defs.' Mem. at 15.

As the plaintiff notes, Congress has provided the defendants with the means to avoid this very problem.  The same provision of the FOIA that requires agencies to make their final decisions in cases they adjudicate publicly available also permits those agencies to redact those decisions to remove references to the parties' identities.  The provision states  that "[t]o the extent required to prevent a clearly unwarranted invasion of personal privacy, an agency may delete identifying details when it makes available or publishes an opinion, statement of policy, interpretation, staff manual, instruction, or copies of records referred to in [5 U.S.C. § 552(a)(2)(D)]."[19]  5 U.S.C. § 552(a)(2).  To be sure, the FOIA places the decision whether to redact such materials within the discretion of the agency, in that the foregoing provision merely permits, rather than requires, the disclosing agency to delete identifying details.  Id.  However, if an agency declines, as the ECAB has done, to redact such identifying information from decisions it makes available to the public, the disclosure of the information may "constitute a clearly unwarranted invasion of personal privacy," thereby removing that disclosure from the scope of the FOIA entirely.  5 U.S.C. § 552(b)(6).

---

[19] However, such redaction is limited by certain procedural requirements.  Section 552(a)(2)(D) states that

in each case [where records are redacted] the justification for the deletion shall be explained fully in writing, and the extent of such deletion shall be indicated on the portion of the record which is made available or published, unless including that indication would harm an interest protected by the exemption in subsection (b) under which the deletion is made. If technically feasible, the extent of the deletion shall be indicated at the place in the record where the deletion was made.

5 U.S.C. § 552(a)(2)(D).

In any event, the Court is unable to conclude that the disclosure of the plaintiff's ECAB

decision to the public without the redaction of his name or other details directly revealing his

identity constitutes a "use of [that] record for a purpose which is compatible with the purpose for

which it was collected," 5 U.S.C. § 552a(a)(7).  For this reason, the Court finds that the

publication of the plaintiff's decision without such redaction cannot constitute a "routine use"

within the meaning of § 552a(b)(3), and the Court must therefore deny the defendants' motion

for summary judgment on the plaintiff's claim for injunctive relief.

**B.**      **The Plaintiff's Claim for Damages**

The plaintiff also seeks an award of damages pursuant to 5 U.S.C. §§ 552a(g)(1)(D) and

552a(g)(4).  The defendants argue that even if the plaintiff's claim for damages is not time-barred

by the Privacy Act's two-year statute of limitations, 5 U.S.C. § 552a(g)(5), the plaintiff cannot

prevail on his damages claim because the conduct giving rise to the alleged violations was

neither intentional nor willful as required by § 552a(g)(4).  In his opposition, the plaintiff argues

that his complaint does allege that the defendants "willfully and intentionally released [his]

private medical information," Compl. ¶ 32, and thus contends that his complaint properly states a

claim for damages.  Pl.'s Opp. at 3.  In support of his argument, the plaintiff offers a declaration

by his attorney which purports to demonstrate that the "defendants have for some time known

about the problem that publishing [ECAB] decisions on the Internet is causing, that federal

employees are suffering damages, and that [the] defendants have turned a deaf ear to their

complaints."  Id. at 11; see also Hannon Decl.  Even if the plaintiff could substantiate all of the

allegations contained in his opposition and his attorney's declaration, the Court agrees with the

defendants that he cannot demonstrate that the defendants' alleged actions amounted to the type

of intentional or willful conduct required by the Privacy Act. Accordingly, damages cannot be awarded against the defendants.

In addition to its authority to grant injunctive relief and related attorney's fees pursuant to 5 U.S.C. §§ 552a(g)(2)-(3), the Court may award damages to a plaintiff bringing an action under §§ 552a(g)(1)(C) or (D) if "the court determines that the agency acted in a manner which was intentional or willful." 5 U.S.C. § 552a(g)(4).[20] As this provision makes clear, "[t]he [Privacy] Act does not make the Government strictly liable for every affirmative or negligent action that might be said technically to violate the Privacy Act's provisions." Albright v. United States, 732 F.2d 181, 189 (D.C. Cir. 1984); see also id. (stating that "the 'intentional and willful' action requirement of [the Privacy Act] refers only to the intentional and willful failure of the agency to abide by the Act, and not to all voluntary actions which might otherwise inadvertently contravene one of the Act's strictures"). Rather, the plaintiff bears the burden of establishing that the conduct giving rise to the alleged violation was intentional or willful. Cooper v. Bureau of Prisons, Civ. No. 02-1844 (JR), 2006 WL 751341, at *3 (D.D.C. Mar. 23, 2006) (citing Albright, 732 F.2d at 189).

A plaintiff cannot meet this standard merely by showing that the conduct giving rise to the alleged violation was not "unintentional or involuntary" or "was not the result of oversight." White v. Office of Pers. Mgmt., 840 F.2d 85, 87 (D.C. Cir. 1988) (per curiam); see also Laningham v. U.S. Navy, 813 F.2d 1236, 1242 (D.C. Cir. 1987) (holding that "the mere fact that the government action in releasing . . . documents could not be characterized as inadvertent does

---

[20] Such damages may not exceed "the sum of (A) actual damages sustained by the individual as a result of the refusal or failure, but in no case shall a person entitled to recovery receive less than the sum of $1,000; and (B) the costs of the action together with reasonable attorney fees as determined by the court." 5 U.S.C. § 552a(g)(4).

not suffice to meet the standard under [§] 552a(g)(4)").  As the District of Columbia Circuit

Court has made clear, "the words 'intentional' and 'willful' in § 552a(g)(4) do not have their

vernacular meanings."  White, 840 F.2d at 87.  "[I]nstead, they are terms of art, . . . [which] set a

standard that is somewhat greater than gross negligence."  Id. (internal quotation marks and

citation omitted).  Specifically, "[§] 552a(g)(4) imposes liability only when the agency acts in

violation of the Act in a willful or intentional manner, either by committing the act without

grounds for believing it to be lawful, or by flagrantly disregarding others' rights under the Act."

Albright, 732 F.2d at 189.  In short, for a plaintiff to be entitled to damages for a violation of the

Privacy Act, "the violation must be so patently egregious and unlawful that anyone undertaking

the conduct should have known it unlawful."  Laningham, 813 F.2d at 1242 (internal quotation

marks and citation omitted).

      The Court concludes, from the undisputed facts established in the record, that the plaintiff

has not met the high standard required in this Circuit for establishing that a violation arose from

willful or intentional conduct.  The defendants assert that the ECAB, far from acting out of a bad

faith effort to disregard the rights of individuals bringing cases before it, believed that making its

decisions easily accessible to the public was not only a permissible routine use but was both

"beneficial to future claimants and appellants" and required under the FOIA.  Defs.' Mem. at 18.

As the defendants indicate, the letters the ECAB sent to the plaintiff on October 26, 2004, see

Compl., Ex. B, and December 22, 2004, see Compl., Ex. C, support their position that the agency

believed its actions to be compatible with, if not required by, federal law.  Both of these letters

specifically reflect an understanding on part of the ECAB that a provision of the FOIA, 5 U.S.C.

§ 552(a)(2), requires it to make its final decisions available to the public, including by electronic

means.  See Compl., Exs. B-C; cf. Laningham, 813 F.2d at 1243 (finding that Navy did not act intentionally or willfully under § 552a(g)(4) because it was "warranted [in its] belief that its actions were lawful [under the Privacy Act]"); Dong v. Smithsonian Inst., 943 F. Supp. 69, 73 (D.D.C. 1996) (holding that the Smithsonian's violation of the Privacy Act was intentional or willful where officials knew they were subject to the Privacy Act yet "chose to ignore the law" in a way which "constitute[d] reckless disregard for the Privacy Act rights" of agency staff).

In holding that the Smithsonian had acted intentionally or willfully, the Dong Court relied on Smithsonian officials' admitted knowledge, at the time of the complained-of conduct, of a prior district court decision, Cotton v. Adams, 798 F. Supp. 22 (D.D.C. 1992), which expressly held that the Smithsonian was an "agency" for the purposes of the FOIA and the Privacy Act. Dong, 943 F. Supp. at 73 (noting that "once Cotton v. Adams was decided, with its specific holding that the Smithsonian fit[] within the definition of 'agency' in [the] FOIA and thereby the Privacy Act, the [d]efendant could no longer reasonably conclude that it was exempt from the Privacy Act").  Here, however, at the time that the plaintiff's unredacted ECAB decision was published, no court had yet concluded, as this Court has now done, that publishing an appellant's name in this context did not constitute "routine use" which was exempted under the Privacy Act. See Cotton v. Heyman, 63 F.3d 1115, 1121-24 (D.C. Cir. 1995) (concluding that Smithsonian's position that it was not an agency for FOIA purposes was reasonable because the issue had not been conclusively decided by Circuit precedent).

While the Court concludes that the defendants in the present case were ultimately incorrect in presuming that publishing the plaintiff's name together with his private medical information was a proper "routine use" within the meaning of § 552a(b)(3), the Court cannot

31

conclude on the basis of the undisputed facts before it that the defendants "flagrantly

disregard[ed] [the plaintiff's] rights under the [Privacy Act]," Albright, 732 F.2d at 189, or that

the violation itself was "so patently egregious and unlawful that anyone undertaking the conduct

should have known it unlawful."  Laningham, 813 F.2d at 1242.  Although the DOL's action in

including the plaintiff's name in the version of his ECAB decision made available to the public is

not "compatible with the purpose for which [the plaintiff's information] was collected," 5 U.S.C.

§ 552a(a)(7), and therefore was not shielded by the previously-issued routine use notice, 58 Fed.

Reg. 49548, 49595 (Sept. 23, 1993), the existence of that routine use notice, as well as the lack of

prior caselaw addressing the issue, gave the defendants a reasonable basis for believing that

publishing ECAB decisions in unredacted form was permitted by the Privacy Act, see Armstrong

v. U.S. Bureau of Prisons, 976 F. Supp. 17, 22 (D.D.C. 1997) (finding that Bureau's conduct was

not intentional or willful because it "simply followed [its own] guidelines" in failing to amend

inmate's second prison file to include information from earlier file); Nathanson v. FDIC, No. 95-

1604, 1996 WL 79479, at *2 (1st Cir. Feb. 22, 1996) (per curiam) (holding that defendant federal

agency's reliance on a published routine use notice "afforded reasonable grounds for believing

that [the disclosure] was lawful").

　　　　The Court finds that the plaintiff has failed to rebut the defendants' showing.  While he

alleges in his complaint that defendant DOL "willfully and intentionally released [his] private

medical information," Compl. ¶ 32, and that defendant Secretary Chao "willfully and

intentionally permitted the release" of that information, Compl. ¶ 36—which, he asserts, amounts

to "willful and intentional disclosure of [his] private medical records," Compl. ¶¶ 33, 37—these

mere allegations are insufficient by themselves to preclude summary judgment, see Fed. R. Civ.

P. 56(e); <u>Burke</u>, 286 F.3d at 517 (citing <u>Anderson</u>, 477 U.S. at 278).  Instead, the plaintiff must

go beyond "the pleadings and by [his] own affidavits, or depositions, answers to interrogatories,

and admissions on file, designate specific facts showing that there is a genuine issue for trial,"

<u>Celotex</u>, 477 U.S. at 324 (internal quotation marks and citation omitted), which he has failed to

do here.

        In his opposition to the defendants' motion for summary judgment, the plaintiff does little

more than recite the "willful or intentional" standard established in <u>Albright</u>, 732 F.2d at 189.

Pl.'s Opp. at 10-11.  Indeed, the plaintiff fails to support his allegations with affidavits that are

"made on personal knowledge, [which] set forth such facts as would be admissible in evidence,

and [which] show affirmatively that the affiant is competent to testify to the matters stated

therein."  Fed R. Civ. P. 56(e).  Instead, the plaintiff offers the two-page affidavit of his own

attorney to support his assertion that the alleged violations were the result of intentional or

willful conduct.  <u>See</u> Hannon Decl.  In this submission, Hannon relates his conversations with

"an attorney with the [DOL] with knowledge of the legal issues raised in the [plaintiff's]

[c]omplaint."  <u>Id.</u> at 1.  According to the plaintiff, these conversations demonstrate that the

"defendants have for some time known about the problem that publishing [ECAB] decisions on

the Internet is causing, that federal employees are suffering damages, and that [the] defendants

have turned a deaf ear to their complaints."  Pl.'s Opp. at 11.  Specifically, Hannon declares that

the DOL attorney made the following statements: (1) that the DOL "had received complaints

from federal employees over the past two years about the publication of medical information in

their workers' compensation cases published on the DOL website," Hannon Decl. at 1; (2) that

"some complainants were crying and reported adverse consequences as a result of persons

33

reading their private medical information on the [I]nternet," id.; (3) that "the Solicitor for the

[DOL] was aware of the issue," id.; (4) that the DOL "was considering blocking Google searches

of its website," id. at 2; and (5) that the DOL "had rejected the idea of sanitizing the opinions,"

id.[21]  Given the plaintiff's representations regarding the need for factual discovery in this matter,

Pl.'s Opp. at 1, 2, 11, the Hannon Declaration is presumably intended not only to set forth

disputed material facts regarding the intentional or willful nature of the defendants' alleged

conduct, id. at 1, but to suggest the facts that would be adduced on this issue were the plaintiff to

be allowed to gather additional "depositions, answers to interrogatories, or . . . affidavits" in

order to oppose the defendants' summary judgment motion, Fed. R. Civ. P. 56(e).

  The affidavit, however, fails in both respects.  Not only does it plainly not "set forth . . .

facts as would be admissible in evidence" in response to the defendants' summary judgment

motion, Fed. R. Civ. P. 56(e), but it does not carry the plaintiff's burden of demonstrating that

the defendants' conduct was intentional or willful.  In particular, the Hannon declaration consists

almost entirely of hearsay, see Fed. R. Evid. 801(c),[22] which is generally inadmissible as

evidence, see Fed R. Evid. 802.[23]  With or without these hearsay statements, the declaration is

clearly insufficient to defeat the motion for summary judgment.  See Commercial Drapery

Contractors v. United States, 133 F.3d 1, 7 (D.C. Cir. 1998) (holding that "[a]n affidavit . . .

consisting entirely of inadmissible hearsay . . . is not sufficient to defeat summary judgment")

---

  [21]  The plaintiff's opposition incorrectly states that the Hannon Declaration also indicates, inter alia, that "the sole reason why [the] DOL has done nothing to remedy this situation is bureaucratic obstinacy and callous disregard for the privacy rights of millions of federal employees."  Pl.'s Opp. at 2.

  [22]  Federal Rule of Evidence 801(c) states that "[h]earsay statement[s are statements, other than those] made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted."

  [23]  Hearsay statements are admissible under certain limited exceptions, none of which are applicable here. See generally Fed. R. Evid. 803.

(citations omitted); see also Gleklen v. Democratic Cong. Campaign Comm., 199 F.3d 1365, 1369 (D.C. Cir. 2000).

Moreover, the declaration does not allege conduct which, if true, is "so patently egregious and unlawful that anyone undertaking [it] should have known it unlawful." Laningham, 813 F.2d at 1242. Even assuming that the defendants were on notice that federal employees other than the plaintiff were aggrieved by the publication of their medical information on the DOL website, this does not lead the Court to conclude that the defendants "flagrantly disregard[ed] [the plaintiff's] rights under the [Privacy Act]," Albright, 732 F.2d at 189, by failing to redact his name when publishing the decision of his ECAB appeal. Tellingly, the plaintiff does not by the Hannon Declaration indicate that he seeks to adduce evidence that the DOL should have known that failing to redact the plaintiff's name from his ECAB decision was a Privacy Act violation. Rather, the details of the plaintiff's allegations deal solely with the adverse consequences of the defendants publishing confidential medical information in the ECAB decisions on the DOL website, see Pl.'s Opp. at 1-2, 11; Hannon Decl., which this Court has concluded is a "routine use" that cannot constitute an actionable violation of the Privacy Act. At bottom, the plaintiff provides no "specific facts showing that there is a genuine issue for trial," Celotex, 477 U.S. at 324, as to whether the defendants "act[ed] in violation of the [Privacy] Act in a willful or intentional manner" when they disclosed the plaintiff's name and other identifying details in his published ECAB decision, Albright, 732 F.2d at 189. Accordingly, the Court grants the defendants' motion for summary judgment on the plaintiff's claim for damages.

### V. Conclusion

Because the Court concludes that the plaintiff has exhausted his administrative remedies with respect to his claim for injunctive relief, the defendants' motion to dismiss this claim pursuant to Rule 12(b)(6) is denied. Moreover, because the routine use exception provided by 5 U.S.C. § 552a(b)(3) does not apply to the publication of the plaintiff's unredacted ECAB decision, the Court denies the defendants' motion for summary judgment on the plaintiff's injunction claim. The plaintiff has not, however, met his burden of showing that the alleged Privacy Act violations resulted from "willful or intentional" conduct on the part of the defendants as these terms have been defined by the District of Columbia Circuit, and the Court accordingly grants the defendants' motion for summary judgment on the plaintiff's claim for damages. Finally, the Court is not persuaded that the routine use exception invoked by the defendants applies to the publication of the plaintiff's ECAB decision without the redaction of his name or other details that would directly reveal his identity. Due to the nature of the ongoing reputational harm alleged by the plaintiff, the Court will therefore order the defendants to show cause by September 22, 2006, why the Court should not enter an order requiring the removal of any publicly-accessible copies of the plaintiff's ECAB decision within the defendants' control, pending final resolution of this case, that contain his name or similar identifying information. SO ORDERED this 6th day of September, 2006.[24]

REGGIE B. WALTON
United States District Judge

---

[24] An Order consistent with the Court's ruling accompanies this Memorandum Opinion.